**Kee *Tom* Farley, et al., Plaintiffs,**

v.

**Kerr McGee, et al., Defendants.**
**Decided April 23, 1999**

## ORDER

Judge Lorene Ferguson presiding.

THIS MATTER came before the Court upon Defendants' Motion to Compel Discovery Regarding Traditional Navajo Medicine, and the Plaintiffs' Motion for Entry of a Protective Order and Memorandum in Opposition to Defendants' Motion. The Court, having heard testimony and being fully informed in the matter, hereby FINDS:

1. That on July 7, 1997, Defendants filed a Motion to Compel Discovery Regarding Traditional Navajo Medicine, seeking an Order by this Court compelling Plaintiffs to disclose the identity of and services performed by any Navajo medicineman or men who allegedly treated the decedent, Lucy K. Farley, for the illness for which Plaintiffs claim damages against the Defendants. In their accompanying Memorandum of Points and Authorities, Defendants assert that they are entitled to this information in order to test the strength of Plaintiffs' damages allegations. The Memorandum of Points and Authorities was supported by the Affidavit of Benny Silversmith, a traditional Navajo Medicineman, consultant and teacher on the Navajo way of life, who asserts that he is not aware of a practice requiring the name of a treating medicineman or the ceremonies he performed to be kept confidential.

2. That on September 19, 1997, Plaintiffs filed a Motion in Opposition to Defendants' Motion to Compel Discovery regarding Traditional Navajo Medicine, asserting that the Navajo Way mandates that the names of medicinemen and the ceremonies they perform be kept confidential, but that third parties who witnessed the relevant ceremony could provide information regarding the amount and type of payment made to the medicineman. Defendants did not accept Plaintiffs' proposal regarding third party witnesses. This Motion was supported by the Affidavits of medicinemen, Willie Weaver and Frank Bluehorse, verifying their awareness of the confidential nature of the medicineman's identity, as well as the ceremonies he performs.

3. That on October 20, 1997, Defendants noticed the depositions of Frank Bluehorse and Willie Weaver, to take place at 9:00 a.m. and 11:00 a.m., respectively, on November 10, 1997.

4. That on October 28, 1997, Defendants filed a Motion to Compel Discovery

Regarding Traditional Navajo Medicine, suggesting the lack of existence of a secret nature surrounding the identity of medicinemen and the ceremonies they perform was so widely known that the Court could judicially notice such from its own experience. In support of their position, Defendants attached the Affidavit of Taylor Dixon, the chairman of the Dineh Medicine Men Association. Defendants suggested that the Court might wish to appoint its own expert on Navajo culture at the joint expense of the parties.

5. That on October 30, 1997, Plaintiffs filed a Motion for Entry of a Protective Order, seeking an order by the Court denying Defendants' Motion to Compel Testimony regarding Traditional Navajo Medicine and precluding Defendants from taking the depositions of Willie Weaver and Frank Bluehorse. Plaintiffs attached a Memorandum in Opposition to Defendants' Motion to Compel Discovery Regarding Traditional Navajo Medicine and In Support of Plaintiffs' Motion for a Protective Order, asserting that compelling the testimony of the two medicinemen was contrary to the *Belone* procedure established by the Supreme Court of the Navajo Nation, 5 Nav. R. 161 (1987).

6. That on November 3, 1997, Defendants filed a Supplemental Affidavit by Bennie Silversmith in support of their Motion to Compel Regarding Traditional Medicine.

7. That on November 7, 1997, Defendants filed a Response to Plaintiffs' Motion for a Protective Order, asking that the Court expedite its ruling on the Plaintiffs' Motion which they claimed was untimely and not well-founded, so that the depositions might proceed as scheduled. Defendants assert that *Belone* does not preclude information gathering on Navajo custom through deposition and that both Frank Bluehorse and Willie Weaver might have information regarding unrelated issues and thus might be deposed as fact witnesses.

8. That on November 7, 1997, this Court ordered that Defendants' Motion to Compel Regarding Traditional Navajo Medicine be denied and that Plaintiffs' Motion for a Protective Order be granted.

9. That on December 3, 1997, Defendants noticed the Deposition of Willie Weaver, who was to be deposed only as a fact witness, at 3:30 p.m. on December 11, 1997. Plaintiffs then filed a Motion for Protective Order, to preclude the Defendants from taking Mr. Weaver's deposition. Cyprus Foote then filed a Response to Plaintiffs' Motion for Entry of Protective Order, on December 8, 1997.

10. That Counsel for the Defendants included the issue of the "medicineman privilege" in a list of unresolved issues to be scheduled for discussion at a status conference of the parties to be held on April 29, 1998, indicating that Plaintiffs' counsel agreed with inclusion of this issue at the status conference, and suggesting that the Court determine a procedure for resolving the conflict and set the matter for further hearing.

11. That on April 29, 1998, the parties appeared before the Court at a status hearing and indicated the agreement of the parties that Mr. Weaver would be

deposed as a fact witness, although he was presently unavailable, and that Mr. Bluehorse would not be deposed. The issue of the "medicineman privilege" was not otherwise discussed.

12 That on July 14, 1998, the parties appeared again before the Court at a status hearing whereupon the "medicineman privilege" issue was raised and the parties indicated they were unable to resolve their differences on this matter.

## CONCLUSIONS OF LAW

The issue of whether or not Navajo custom requires that the names of medicinemen and the ceremonies that they perform for a patient are confidential is in dispute. The parties have been unable to resolve the issue among themselves.

In *In re Estate of Annie Belone*, 5 Nav. R. 161 (1987), the Navajo Supreme Court provided the method by which Navajo custom may be determined when it is disputed in a case. *Belone* clearly states that the court should hold an informal pre-trial conference with two or three expert witnesses as appointed by the court. The basis of the experts' knowledge and how it is relevant to the issue to be decided must be clearly established on the record whereupon it is within the court's discretion to determine the admissibility of the experts' testimony. The pre-trial conference may be attended by counsel for both parties. However, their participation is limited to asking questions in order to clarify the expert witnesses' conclusions. 5 Nav. R. at 167.

The foregoing procedure allows the people summoned who are knowledgeable in Navajo custom to discuss the disputed custom and reach a consensus. This process, in and of itself, will provide counsel in the present case the opportunity to obtain information about Navajo custom and realize the experts' experience and credentials.

IT IS THEREFORE ORDERED that:

1. The parties will each compile a list of three names of witnesses purporting to be experts on Navajo medicine and tradition, who can potentially assist the Court in determining whether the identity of Navajo medicinemen and the ceremonies they perform are customarily considered confidential or privileged information and will submit the lists to the Court within thirty days from the date of the July 14th hearing, or no later than August 13, 1998.

2. The parties have an additional thirty days, or until September 13, 1998, to collaborate with one another and provide this Court with a total of one expert witness from among the six combined names, for the purpose of determining whether the identity of and services performed by Navajo medicinemen may be disclosed.

3. In the event the parties are unable to agree on a single expert witness, pursuant to Rule 24(a) of the Navajo Rules of Evidence, this Court will select one or more experts without being limited in choice to the six names provided by the parties, and will appoint such expert within thirty days, or as soon as reasonably possible.

4. In accord with the procedures established by the Navajo Supreme Court in *In re Estate of Annie Belone*, 5 Nav. R. 161, this Court will then schedule an informal pre-trial conference, with two or three expert witnesses appointed by the Court and qualified as experts on the record, which the parties and their counsel may attend, limiting their participation to questions clarifying the experts' conclusions until such experts arrive at a concensus as to how Navajo custom is best applied to the present case.

Determination of the admissibility of such expert testimony is within the discretion of this Court and the decision to admit such testimony as evidence of Navajo custom on this matter will be final.